# STATE OF MICHIGAN

# COURT OF APPEALS

In re A.G. and A.L. AVERYETTE, Minors.

UNPUBLISHED
March 10, 2015

No. 321922
Wayne Circuit Court
Family Division
LC No. 12-507617-NA

In re A. AVERYETTE, Minor.

No. 323056
Wayne Circuit Court
Family Division
LC No. 12-507617-NA

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Following an extended child protective proceeding, the circuit court terminated respondent-mother's parental rights to her two older children, AG and AL, but retained her rights to her youngest child, A, to allow additional time to benefit from services. In these consolidated appeals, respondent challenges the sufficiency of the evidence supporting the termination decision as to AG and AL and the court's determination that A came within its jurisdiction. Even with heightened agency assistance, respondent repeatedly failed to follow directions in order to obtain services and therefore never overcame the conditions that led to the removal of her children. Accordingly, we discern no error in the circuit court's decisions. We affirm.

## I. BACKGROUND

Respondent is a developmentally delayed adult with an IQ of 61. She is unemployed and lives with her mother, who also has a long Child Protective Services (CPS) history. Respondent's siblings and their children also live in her mother's home. Respondent's oldest child, AG, was born on March 19, 2011. The Department of Human Services (DHS) took AG into care in May 2012, based on medical neglect. AG suffered from a penile birth defect and respondent had failed to secure necessary surgery. AG's skull plates were not fusing at a normal rate, he suffered from an untreated congenital heart condition, and was diagnosed as failure to thrive. On May 23, 2012, respondent brought AG to the hospital because he had a high fever and had not eaten in three days because of painful mouth sores caused by hand, foot, and mouth

-1-

disease. Against medical advice, respondent left the hospital without actually obtaining treatment for the child. A follow-up investigation revealed that the child was covered in bed bug bites, respondent lacked AG's prescribed asthma medication, and respondent had not taken the baby for a well-child visit since he was two months old.

Following AG's removal, the court ordered respondent's participation in parenting classes, therapy and psychological and psychiatric evaluations. The court also ordered respondent to obtain suitable housing and employment and awarded supervised visitation. Respondent was deemed noncompliant with these services. As a result, when respondent's second child, AL, was born on October 4, 2012, the DHS immediately took her into care.

Over time, the DHS provided greater assistance to respondent. An infant mental health therapist was assigned to provide individual parenting classes during visitation. She also provided one-on-one counseling for respondent. The DHS sought out agencies that specialized in assisting mentally impaired adults. The court even appointed a guardian ad litem for the cognitively impaired mother. However, respondent failed to follow through with a referral for GED tutoring services because the program required a drug test and respondent indicated that she had been using marijuana. Respondent was then ordered to participate in substance abuse counseling and random drug screenings. Respondent never secured employment and refused assistance to move out of her mother's unsuitable residence. Respondent repeatedly failed to inform the DHS when she received applications and other forms required for services. As a result, the DHS workers' efforts to assist respondent were hampered and services were delayed.

Parenting time also did not go well. Respondent focused her attention on AG, to the point that she ignored AL. Respondent admitted that AG was more special to her than AL. Respondent failed to feed young AL during some parenting time sessions and she allowed AG to engage in unsafe activities. Respondent did not comfort the children when they cried and even laughed at them. The parenting time supervisor often had to intervene for the children's safety.

Respondent became pregnant during the proceedings with her third child, A, and gave birth on January 20, 2014. A was born with marijuana in his system and suffered withdrawal symptoms. The DHS immediately took the infant into care.

In March and April 2014, the circuit court conducted a combined adjudication trial in relation to A and a termination hearing in relation to all three children. In addition to the above-cited evidence, the DHS witnesses described that AG and AL had both been diagnosed with a genetic disorder called MELAS (mitochondrial encephalomyopathy, lactic acidosis, and stroke-like symptoms). This serious condition affects the brain and nervous system, and causes symptoms such as seizures and stroke-like incidents. Evidence further revealed that respondent had not sought treatment for her own medical issues. Respondent did not attend several prenatal appointments while pregnant with A, failed to attend follow-up visits after doctors discovered a lump in her breast, and did not take prescribed medication to treat her depression. Respondent reported that she lacked the energy and motivation to get out of bed and conceded that this

mental and physical state would prevent her from adequately caring for the children.[1] Ultimately, the DHS witnesses opined that her cognitive impairment was not at the root of respondent's failure to benefit from services. Rather, respondent's admitted lack of follow-through, along with her marijuana abuse, were the main causes of her continued inability to care for her children. And the lack of follow-through was not due to respondent's impairment, witnesses testified.

Ultimately, the circuit court took jurisdiction over A based on respondent's marijuana use and failure to comply with her service plan. The court determined that termination was supportable as to all three children under MCL 712A.19b(3)(c)(*i*) (failure to rectify the conditions that led to adjudication) and (g) (failure to provide proper care and custody). The court further found termination to be in the best interests of AG and AL. The court deemed termination premature as to A, however, and allowed respondent additional time to attempt to benefit from services.

## II. TERMINATION OF PARENTAL RIGHTS

Respondent now challenges the court's termination decisions as to AG and AL. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven. The petitioner bears the burden of proving that ground. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). We review a circuit court's factual finding that a statutory termination ground has been established for clear error. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

Respondent complains that termination was improper as she "complied with the treatment plan to the best of her ability given her cognitive delays and the lack of services provided by the DHS." "When a child is removed from a parent's custody, the agency charged with the care of the child is required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011).[2] "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). "[A trial] court is not required to terminate parental rights if the State has not provided to the family of the child . . . such services as the State deems necessary for the

---

[1] Respondent told the infant mental health therapist that she was "not a doer." Respondent indicated, "I don't get up and do the things I know I need to do."

[2] In cases where services are not statutorily required, the DHS is required to inform the court of the basis for withholding services. *Plump*, 294 Mich App at 272.

safe return of the child to the child's home." *Id.* at 105 (quotation marks and citation omitted). However, the "time for asserting the need for accommodation in services is when the court adopts a service plan," not at the eleventh hour. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012); see also *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000).

Here, the DHS recognized respondent's special needs and attempted to accommodate them. Unfortunately, precursory hurdles had to be jumped. Respondent failed to follow through with paperwork, appointments, and meetings. She failed to inform the caseworker when she needed assistance with applications. The children cannot remain indefinitely in foster care without a permanency plan awaiting their mother's cooperation to begin appropriately geared services.

Moreover, termination was supported by two statutory grounds. Termination is appropriate under MCL 712A.19b(3)(c)(*i*) if "182 or more days have elapsed since the issuance of an initial dispositional order, and . . . [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." AG had been in care for nearly two years and AL for 1½ years. Yet, respondent had remedied none of the conditions that led to court intervention.

Respondent still lived with her mother and siblings in an unsuitable home. Respondent remained unemployed and had made no educational gains. The most serious impediment to reunification—inability to manage the children's medical needs—also remained a concern. During the proceedings, medical testing revealed that AG and AL suffer from a serious genetic condition that will require extensive parental supervision. Respondent continued to show a lack of follow-through and patience, however, that could endanger the children's health. While respondent attended an appointment related to AL's genetic testing, she became impatient and left the hospital when one of AG's surgeries was delayed. Respondent exhibited behaviors suggesting that she would not take the children even for their routine medical appointments. While pregnant with A, respondent failed to attend her prenatal appointments and did not pursue additional testing after a concerning ultrasound. Doctors discovered a lump in respondent's breast and she did not take prescribed antibiotics or make a recommended appointment for cancer screening. Respondent also failed to take medication prescribed to treat her serious depression and did not attend medication evaluation appointments. Given respondent's lackadaisical approach to important medical concerns, the court could determine that she would be unable to rectify this condition within a reasonable time.

The DHS also established by clear and convincing evidence that termination was appropriate under MCL 712A.19b(3)(g), "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Respondent admitted to case workers that she would be unable to care for the children's medical needs. Specifically, she told the infant mental health therapist that "she loves her children," but that "[s]he just knows that she's at a point where she can't do it." Moreover, during parenting time sessions, respondent exhibited that she could not safely care for the children without supervision, despite two years of services. Respondent often ignored young AL and failed to feed her, and she allowed AG to engage in activities that could have caused serious injury. Once A was born, she ignored both AG and AL during parenting sessions, focusing solely on the new

infant. Respondent also continued to use marijuana, even while pregnant. Given respondent's inability to consistently comply with and benefit from services, the court did not err in finding that respondent would not be able to provide proper care and custody within a reasonable time. See *Frey*, 297 Mich App at 248 ("While the DHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered.").

The circuit court also properly determined that termination was in AG's and AL's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The lower court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors in this consideration include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted).

The witnesses testified that respondent does love her children and shared a bond with AG. However, the record also supports that respondent favored AG over AL, and then favored A over both older children. The children showed a stronger bond with their foster parents than respondent. Moreover, respondent lacked the ability to adequately parent the children. After two years, her parenting time remained supervised and caseworkers still had to intervene for the children's safety. Respondent's parenting ability had not improved despite the provision of individual counseling in this regard. Respondent cannot provide the children with "permanency, stability, and finality" either. Respondent has not benefitted from services geared toward establishing her independence. Respondent herself admitted that the children's foster parents were better suited to care for the children, and that she could not provide the quality of care that the foster parents provided with any degree of consistency. These same foster parents have indicated that they wish to adopt the children. Accordingly, the circuit court did not clearly err when it determined termination was in AG's and AL's best interests.

### III. ADJUDICATION

We also find no error in the court's jurisdictional decision regarding A. A court must find by a preponderance of the evidence that a statutory ground for exerting jurisdiction exists. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). We review the lower court's decision "for clear error in light of the court's findings of fact." *Id*.

Respondent contends that the DHS was not required to file a petition for jurisdiction over A simply based on the presence of marijuana in his system. Respondent ignores, however, that the DHS had already determined that marijuana abuse was a roadblock to reunification and had provided substance abuse counseling and drug screenings to respondent. Respondent also avoided prenatal care to ensure A's safe birth. Removal of A from respondent's custody was necessary, not only because respondent had abused marijuana, but also because she had not adequately participated in and benefited from services in relation to AG and AL and therefore could not safely parent any of her three children.

And the court's determination that A came within its jurisdiction was not clearly erroneous. "In order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea." *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). Pursuant to MCL 712A.2(b), jurisdiction exists if a child:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship[, or]

> * * *

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

It is undisputed that despite the DHS's efforts to educate her to its dangers, respondent used marijuana during her pregnancy. This led to A's positive test for marijuana at birth and his withdrawal symptoms. Respondent also neglected to obtain prenatal care. Based on her conduct with respect to AG and AL, it was also clear that respondent lacked basic parenting skills, appropriate housing, income, or the ability to provide her children with medical care. On this record, it is apparent that respondent "neglect[ed] or refuse[d] to provide proper or necessary support . . . medical, . . . or other care necessary" for A's health or morals, and that A was "without proper custody or guardianship." MCL 712A.2(b)(1). It is also clear that A's "home or environment, by reason of neglect, . . . [was] an unfit place for the juvenile to live in." MCL 712A.2(b)(2). Accordingly, the circuit court did not err when it assumed jurisdiction over A.

Respondent again asserts that the circuit court's actions were premature because she was not provided adequate services by the DHS. As is required by MCL 712A.18f(1), the DHS's petition detailed "what efforts were made to prevent the child's removal from his or her home or the efforts made to rectify the conditions that caused the child's removal from his or her home[.]" These efforts were encompassed in the parent-agency agreement initiated in May 2012. As discussed, it was not a lack of efforts by DHS that caused the court to assume jurisdiction over A, it was respondent's failure to participate in and benefit from services.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood